MARCIA CAPORN (SBN 263087)
**LOUDERBACK LAW FIRM**
1249 Park Ave
San Jose, CA 95126
Phone: 650-468-5556
mcaporn@louderbacklawfirm.com


Attorney for Defendants,
MARCIA WALLIS, DANIEL WALLIS,
MARCIA CAPORN, and ADAM CAPORN

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| MARCIA WALLIS, an individual; DANIEL WALLIS, an individual; MARCIA CAPORN, an individual; and ADAM CAPORN, an individual;<br><br>        Plaintiffs,<br><br>v.<br><br>THE HOLCOMB CORPORATION dba HOLCOMB BROKERAGE (DRE #00618810); KYLA HOLCOMB PIRAMOON, an individual; KAY HOLCOMB, an individual, LOIS HOLCOMB, an individual, SEASCAPE RESORT LTD, a California limited partnership; and DOES 1–25<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **Aiding and Abetting Breach of Fiduciary Duty**<br>2. **Unfair Business Practices (Bus. & Prof. Code §17200)**<br>3. **Fraudulent Inducement**<br>4. **Breach of Implied Contract**<br>5. **Breach of Covenant of Good Faith and Fair Dealing**<br>6. **FRAUD**<br>7. **Quiet Title/Easement**<br>8. **Equitable Easement**<br>9. **Violation of Sherman Act §§ 1 and 2 (15 U.S.C. §§ 1, 2)**<br><br>**AND DEMAND FOR JURY TRIAL**<br><br>Filing Date: August 21, 2025<br>Court Date: not yet set |

# I.   INTRODUCTION

1.      In April 2001, Plaintiffs Marcia Wallis and Daniel Wallis and Dominic and Maureen Caloiaro purchased a condominium at Seascape Beach Resort, relying on representations from Agents at Holcomb Corporation, Mark Holcomb and Kyla Holcomb Piramoon's brokerage. They were also driven around and shown the property by Jim Maggio, GM of Seascape Resort.  Mr. Maggio explained all the ownership benefits to the Plaintiff Wallis and Mr. and Mrs. Caloiaro. Seascape Resort Limited, The Holcomb Corporation, and  their agents made representations and provided materials that the condo purchasers would have permanent access to resort amenities, including but not limited to pools, gym, spas, security, and beach fire pits, as the HOA, of which they were granted membership of when becoming owners, owned and provided these features.

2.      These representations were made verbally and through marketing materials, never indicating that amenity access required participation in Defendants' rental management program. Moreover, they explicitly said the HOA owned these common areas.

3.      For over 25 years, Plaintiffs' monthly HOA dues explicitly included maintenance and access to these amenities.

4.      Plaintiffs' purchased their unit through an agent at The Holcomb Corporation (dba Holcomb Real Estate) located within the resort, where Mark Holcomb and then Kyla Holcomb were the officers of the Brokerage.  No one at The Holcomb Corporation, disclosed the Brokerage's familial connection to Seascape Resort Ltd. ("SRL"), commercial ownership rights, or Seascape Homeowners Association management company, SRL.   When Defendant Kyla Holcomb Piramoon took over management and control of The Holcomb Corporation she perpetuated these statements and omission to help drive up sales prices and continue to mislead new and current owners of units.

5.      Kyla Holcomb Piramoon's parents, Mark and Kay Holcomb, were the principal owners of Seascape Resort Ltd. (SRL), which now restricts Plaintiffs' access to amenities and claims

ownership of common areas. Defendant Kyla Holcomb is secretary of the business and is a direct beneficiary of her mother's estate, including Seascape Resort Ltd (SRL).

6.    After Plaintiff Marcia Wallis refused to use SRL's contractor for updates to the unit; Defendant SRL kicked her unit out of the on-site rental pool and demanded she get an independent management.  After this termination from the SRL management, she was still allowed to use the pool and common areas until the Preliminary Injunction issues June of 2025.  It was the first time she was told her access to the pool was conditioned on using SRL management.

7.    Plaintiff Marcia and Adam Caporn bought a 50% interest in the unit from Dominic and Maureen Caloiaro in 2022.  Marcia Caporn is Marcia and Daniel Wallis' daughter.  They used the property for the last 25 years while the family owned it.

**8.**    The 1992 CC&R's section 4.08: "With respect to the actual renting of a unit, an owner may at **their sole discretion**, elect to be responsible for the renting of their unit, or **may delegate the responsibility of the rental of their unit to a rental agency of their choice.**

The Declarant, or its assigns, or the Owner of Unit 85 may operate a rental agency program on the premises of the Commercial Unit including the exclusive right to advertise "The Seascape Resort and Conference Center" for commercial purposes related to the Commercial Unit...**Nothing contained in this Declaration shall serve to limit the right of any Owner to select a rental agent for their Unit** provided such rental complies with all of the Project Documents and Rules and Regulations." (emphasis added).

1994 CC&Rs: These CC&Rs contain the same language above from Section 4.08.

9.    Mark Holcomb through his company The Holcomb Corporations developed the land. Per the agreement with the County he was to develop ana HOA.  In the CC&R's, after the sale of the first unit all Annexations required HOA community vote, as the HOA members owned the common areas. See **Exhibit A**: 1994 CC&Rs), while there were exceptions, a vote is required if any Annexation creates undue burden or detriment to the other owners.  On August 11, 2025, the HOA

management company confirmed there is no record of a vote approving the Annexation of Unit 534. In this Annexation, Mr. Holcomb attempted to "deed" himself a large area on the South Bluff through the creation of new commercial unit in 1996. There is no HOA approval for this new commercial unit development and control to Seascape Resort Limited to the entire pool and recreational area.

10.    Any drafting or interpretation that would deny homeowners all access to the pool and other major recreational areas, while vesting complete control in a single commercial unit, constitutes an "unreasonable burden" upon the residential owners in violation of §3.05(a)(2), which requires that annexations or allocations of use "shall not result in an unreasonable diminution of the benefits to, or an unreasonable increase in the burdens upon, existing Owners in the Project." Such an interpretation deprives homeowners of the very recreational and residential amenities for which they purchased their units, rendering their property rights illusory. (see **Exhibit A**).

11.    The CC&Rs expressly provide that: "The Common Area shall consist of the entire Project except all Units including the Commercial Unit… Each Unit Owner shall have appurtenant to that Unit one undivided interest in the Common Area of each Phase for each such Unit owned" (CC&Rs §3.02). Thus, the Homeowners' Association, comprised of all unit owners, collectively owns the Common Area as tenants-in-common, including Exclusive Use areas. (see **Exhibit A**).

12.    While §3.03 grants Unit 85, and later the Annexation Unit 534 "Exclusive Use Common Areas… including all Deck and Patio Areas adjacent to the Conference Center, Unit 85, and the Pool, including the right to conduct general commercial activities including food and beverage service within the Exclusive Use Common Areas," the language establishes only a limited use right for commercial operations. Ownership remains vested in the Association, and the exclusive use is confined to "conduct[ing] general commercial activities," not to excluding other owners from personal access and enjoyment.

//

//

13.     Section 3.02 further confirms that: "Each Unit Owner may use the Common Area in accordance with the purposes for which they are intended without hindering the exercise of or encroaching upon the rights of any other Unit Owners." (see **Exhibit A**).

14.     SRL's attempt to construe §3.03 as granting the commercial unit the unilateral ability to exclude homeowners from the pool or other designated areas would (1) convert an exclusive use license into exclusive ownership, contrary to §3.02, and (2) unlawfully strip homeowners of vested appurtenant property rights expressly guaranteed in the CC&Rs.

15.     Any drafting or interpretation that would deny homeowners all access to the pool and other major recreational areas, while vesting complete control in a single commercial unit, constitutes an "unreasonable burden" upon the residential owners in violation of §3.05(a)(2), which requires that annexations or allocations of use "shall not result in an unreasonable diminution of the benefits to, or an unreasonable increase in the burdens upon, existing Owners in the Project."  Based on SRL's interpretation the entire project and owners are limited to only the North Bluff pool which has a capacity of 16 people.  Moreover, it's in direct contradiction with the CC& which grants the owners sole discretion to use onsite or personal rental agency.  Thus, clearly allowing rental outside the definition of Commercial use.  These clauses are to be interpreted narrowly and against the Drafter.

16.     Plaintiffs have not seen any vote or evidence of a vote for Lot One granting this ownership to SRL and believe that Mark Holcomb through The Holcomb Corporation illegally transferred and/or withheld HOA common area to his family despite development requirements for the Project.   This illegal transfer from County to personal use is in direct conflict with the development purpose and was never approved by the HOA.

17.     Despite statements, both oral and written by The Holcomb Corporation (doing business as Holcomb Real Estate, and/or Brokerage) and SRL that the HOA owns all common areas and the owners enjoy unfettered access to all the resort features, less the commercial spaces (limited conference areas, hotel desks, and restaurants), Defendant SRL started to deny Plaintiff access to

amenities on the property.  First, it was the beach fire pits, security, and gym, and now all common areas and the pool.

18.    Holcomb's brokerage and Kyla Holcomb explicitly define the commercial areas that the HOA don't own as:

"Upon close of escrow, all owners automatically become members of the Seascape Resort Owners Association ("the Association" or "SROA"), a California non-profit mutual benefit corporation. The Association is responsible for the management, administration, maintenance, preservation, and architectural control of the Units and the Common Area.

The **Association** owns the Common Area of Seascape Resort, *except for the Commercial Units, which contain the Main Lobby, Registration Desk, Conference Rooms and Restaurant facilities,* which are privately owned and operated by Seascape Resort Ltd." (Emphasis added.  See **Exhibit B**: The Holcomb Corporation (Brokerage) - Marketing materials).

19.    Defendants both orally and through these written materials induced Plaintiff to believe the HOA owns the pools, fire pits and common areas.

20.    Defendants also lay out in these materials that the HOA due to cover fitness, gas and electricity in common areas, pool, onsite security, and other maintenance.  Thus, further supporting the statements and implications that homeowners, as members of the HOA enjoy these benefits without limitation.

"*The monthly cost will vary depending on the square footage of your condominium, but monthly assessments will range from approximately $748.23 and $989.51. The following items are included in this cost: Insurance (Fire, Hazard, Structure & Liability), cable/dish T.V., internet, common area electricity, common area gas, electricity, gas, landscaping, exterior painting, minor repairs &*

*maintenance, road maintenance, pest control, decks, refuse disposal, security patrol,*

*telephone service, swimming pools, spas, fitness, roof, reserves, sewer and water. For*

*more details,  please request the current year owner's association budget.*" (See

**Exhibit B**  Holcomb Brokerage Materials).

21.     For over 25 years, Plaintiffs enjoyed and paid for the pool and other common area

amenities with no threat or requirement of use of SRL management.

22.     We believe the Holcomb family has been manipulating their ownership and control

over The Holcomb Corporation (Holcomb Real Estate, Brokerage) firm selling units on property,

their ownership of SRL, and their previous control and management of Seascape HOA to self-deal

and attempt to change "use rights" to property rights for their self-interest and gain.  Without

following CC&R voting requirements, creating undue burdens, attempting to grant use rights

contrary to the purpose of the development and failing to disclose family conflicts.

23.     Plaintiffs believe that Defendants are actively moving assets and closing businesses to

shield from liability.

24.     Defendants are currently engaging in antitrust activity by illegally using HOA owned

common areas to force the use of their management company.  As well, they are actively threatening

Unit owners that are not in their SRL rental pool with criminal actions if they use competing rental

agency; they are actively attacking and threating other rental management companies within the

resort;  they are unfairly booking rentals disproportionly in Board member and other members

Units who vote in their interest to harm non-SRL renters; and they are approaching non-SRL renters

and advocating they rebook in SRL units for access to HOA owned pool and amenities.  All of these

antitrust activities have begun since they have been attempted to sell their ownership of the onsite

management.

25.     Plaintiff believes that Defendants are attempting to sell their commercial units and

fraudulent advertising that they have exclusive rights to manage all the owner units by attempting to

exploit omission and fraud they actively participated in for over 30 years.  They list sole discretion in use of "rental agency" in CC&Rs and now try to change the definition to "vacation rental" to have non-SRL renters in breach of Planning Documents only they would have known and understood. (See **Exhibit C**).  This was to actively mislead the owners and is their desperate attempt to use unfair business practices to for their rental agency as the sole agency which owners can use.

26.     These fraudulent statements induced the purchase of the units, and now denying ownership rights to these amenities impacts the value of the property dramatically and impacts the ability to rent the vacation unit.

27.     Plaintiffs have suffered serious economic damages.

## II. PARTIES

28.     Plaintiff(s) Marcia and Daniel Wallis are individuals residing in California and owners of a residential unit within Seascape Beach Resort in Aptos, California (the "Property").

29.     Plaintiff(s) Marcia and Adam Caporn are individuals residing in Virginia and owners of a residential unit within Seascape Beach Resort in Aptos, California (the "Property")

30.     Defendant The Holcomb Corporation dba Holcomb Real Estate, Holcomb Brokerage and/or Holcomb Group, is a real estate brokerage licensed in California that facilitated the sale of the Property to Plaintiffs. It was located at Seascape Resort.  They were also the developers of the Seascape Resort.

31.     Defendant Kyla Holcomb Piramoon is a licensed real estate managing director of The Holcomb Corporation (Holcomb Brokerage), the firm that represented the sale of the Property to Plaintiffs.  She is also active member of Seascape Resort Limited (SRL) and secretary of the Unit.

32.     Defendant Kay Holcomb is the CEO of Seascape Resort Limited ("SRL") and wife of developer Mark Holcomb.

33.     Defendant Lois Holcomb is a representative of several Holcomb entities, and we believe is now the owner of several of their properties.  She resides in California.

34.     Defendant Seascape Resort Ltd. (SRL) is a California limited partnership that operates a resort and property management company that now asserts control over certain common areas at the Seascape Beach Resort. The primary owners and managers of SRL were the Holcomb family.  They claim ownership of Lot 1, Units 85 and Unit 534 and all Common areas around these units.

35.     Seascape Resort Limited Owners Association previously outsourced management to a Holcomb-owned management company (The Holcomb Corporation HOA management) for the Seascape Resort property at the time of Plaintiffs' purchase and represented that it owned and maintained the resort's common areas.

36.     Does 1 through 25, inclusive, are sued pursuant to California Code of Civil Procedure section 474.  Plaintiff is unaware of the true names or capacities of these defendants, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes that each of the fictitiously-named Doe defendants, including any such defendants that may be the agents, representatives, or parents or subsidiary corporations of the named defendants, is responsible in some manner for the occurrences, events, transactions, and injuries alleged herein and that the harm suffered by Plaintiff.

# VENUE AND JURISDICTION

37.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiffs assert claims arising under the laws of the United States, including Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. These statutes confer federal question jurisdiction on this Court.

38.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1337(a), as this action arises under federal statutes regulating commerce.

39.     Venue is proper in this District under 15 U.S.C. §§ 15(a), 22 and 28 U.S.C. § 1391(b), because Defendants reside, transact business, and/or may be found within this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and the effects of Defendants' anticompetitive conduct are felt in this District.

40.     The Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal antitrust claims that they form part of the same case or controversy under Article III of the United States Constitution.

41.     In addition, to the extent necessary, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. All acts and omissions giving rise to this action occurred in the State of California. Plaintiff's damages were sustained in Aptos, California, and the harm alleged herein, including economic losses, occurred entirely within this district.

## III. STATEMENT FACTS

42.     Plaintiff believes Defendants collectively developed and managed all aspects of Seascape Resort before and while Plaintiff Wallis purchased the property.  Mark Holcomb was the developer of the land and the primary owner of The Holcomb Corporation (doing business as Holcomb Brokerage and/or Holcomb Real Estate), Seascape Resort Limited (SRL), and served as the controller of Seascape Homeowners Association.   At all relevant times the Holcomb family used these entities for self-dealing.

43.     Defendants filed and approved CC&R's which listed Commercial unit 85 as owned by SRL, and gave them "exclusive use" for commercial purposes of some of the Common Areas.  The

HOA owns these Common Areas and we believe grants a commercial use license not an ownership license of the area.  We also believe it doesn't limit owners' use of these areas.

44.    Any drafting or interpretation that would deny homeowners all access to the pool and other major recreational areas, while vesting complete control in a single commercial unit, constitutes an "unreasonable burden" upon the residential owners in violation of §3.05(a)(2), which requires that annexations or allocations of use "shall not result in an unreasonable diminution of the benefits to, or an unreasonable increase in the burdens upon, existing Owners in the Project." Such an interpretation deprives homeowners of the very recreational and residential amenities for which they purchased their units, rendering their property rights illusory.

45.    The CC&Rs expressly provide that: "The Common Area shall consist of the entire Project except all Units including the Commercial Unit… Each Unit Owner shall have appurtenant to that Unit one undivided interest in the Common Area of each Phase for each such Unit owned" (CC&Rs §3.02). Thus, the Homeowners' Association, comprised of all unit owners, collectively owns the Common Area as tenants-in-common, including Exclusive Use areas.

46.    While §3.03 grants Unit 85, and later the Annexation Unit 534 "Exclusive Use Common Areas… including all Deck and Patio Areas adjacent to the Conference Center, Unit 85, and the Pool, including the right to conduct general commercial activities including food and beverage service within the Exclusive Use Common Areas," the language establishes only a limited use right for commercial operations. Ownership remains vested in the Association, and the exclusive use is confined to "conduct[ing] general commercial activities," not to excluding other owners from personal access and enjoyment, or conditioning rental management of these amenities by Defendants SRL.

47.    Section 3.02 further confirms that: "Each Unit Owner may use the Common Area in accordance with the purposes for which they are intended without hindering the exercise of or encroaching upon the rights of any other Unit Owners."

48.    SRL's attempt to construe §3.03 as granting the commercial unit the unilateral ability to exclude homeowners from the pool or other designated areas would (1) convert an exclusive use license into exclusive ownership, contrary to §3.02, and (2) unlawfully strip homeowners of vested appurtenant property rights expressly guaranteed in the CC&Rs.

49.    Any drafting or interpretation that would deny homeowners all access to the pool and other major recreational areas, while vesting complete control in a single commercial unit, constitutes an "unreasonable burden" upon the residential owners in violation of §3.05(a)(2), which requires that annexations or allocations of use "shall not result in an unreasonable diminution of the benefits to, or an unreasonable increase in the burdens upon, existing Owners in the Project."  Based on SRL's interpretation the entire project and owners are limited to only the North Bluff pool which has a capacity of 16 people.  Moreover, it's in direct contradiction with the CC&R which allow the owners sole discretion to use onsite or personal rental agency.   It was contemplated that Unit owners had sole discretion of rental agencies, and therefore this was outside the definition of "commercial use" for the purpose of the Project.

50.    Defendants filed Annexation for new development including Unit 534 in 1996.  In 1998 Defendants unilateral granted "exclusive use" of commercial use of the South Bluff's areas around the pool and common areas. (See **Exhibit G**).

51.    The 1994 CC&R's explicitly state ""Annexation Pursuant to Approval" (Section 3.05.b) requires the approval in writing of the Association, pursuant to a vote or written consent of 66 2/3% of the total votes residing in Members other than the Declarant" --especially when there is undue burden to the other owners base on the Annexation. (See **Exhibit A**).

52.    In 1996 Defendants filed new development plans under California Civil Code Section 1351(e) under the Sterling Act, which required Defendants to follow the current and in place CC&R's.  The defendant did not act in accordance with the CC&R when it allegedly attempted unilaterally to grant SRL exclusive control and ownership of common areas in direct conflict with the

plans and spirit of the HOA governing documents. The CC&Rs establish a common scheme and plan "for the purpose of enhancing, maintaining and protecting the value and attractiveness of the Property, and the Project, and every part thereof" (Section 1.04). Defendants also breached their fiduciary duty as the controller of the Board and Development by self-dealing.

53. The Certificate under California Civil Code section 1351(e) filed in 1996, Defendants' list exclusive use of 534 as " part of the Common Area consisting of decks, patios, stairs, loading areas **for the general commercial activities**, including food and beverage services, and conference center space." Further highlighting the exclusive commercial use license but not exclusive access and control of recreational areas. **(Exhibit D)**

54. On or about August 14, 1996, the developer recorded a "Condominium Plan" for Seascape Resort, Phase IV, pursuant to California Civil Code section 1351(e). By recording the Condominium Plan, the developer created fee simple ownership of individual units and an undivided fractional ownership interest in the common areas for each purchaser, subject only to the reasonable restrictions of the recorded CC&Rs. (See **Exhibit G**)

55. While Defendants may contend that the property was approved by the California Coastal Commission as a "vacation resort," such land use approvals regulate development and environmental impacts and do not alter the property rights granted to owners under the recorded Condominium Plan (created by Defendants). The recorded Condominium Plan and CC&Rs, not Coastal approvals, define the scope of owners' legal rights. Once the developer elected to proceed under a condominium plan, Defendants could not lawfully force owners to relinquish their co-ownership rights in the common areas, nor compel owners to exclusively use the developer's rental program, absent an express and enforceable provision in the governing documents. Thus, it is Defendants not the Unit Owners, including Plaintiffs that are in breach of contract.

56. On information and belief, Defendants fraudulently concealed the existence and scope of any alleged Coastal or zoning restrictions from purchasers at the time of sale. Moreover, they

fraudulent use the term "rental agency" vs. "vacation rental" to confuse and fraudulent include the owners to believe they had unfettered rights and ownership of HOA land.   Defendants did not disclose to prospective buyers that such approvals would be used to later restrict or eliminate rights that had been affirmatively granted under the Condominium Plan and CC&Rs. Instead, Defendants marketed the property as a true condominium project with all attendant ownership rights, while secretly intending to rely on Coastal approvals to strip owners of their promised rights to access, use, and rent their units and common areas.

57.    Defendants' concealment and misrepresentations were intended to induce purchasers to buy units under the belief that they would enjoy full condominium ownership rights, while Defendants simultaneously retained control over rental revenues and common area use through undisclosed restrictions. Defendants should be estopped from the anti-trust, self-dealing to transfer of these promised rights from Unit Owners to Holcomb run business owned and run by Defendants.

58.    We believe SRL, Defendants, and The Holcomb Corporation are breach of their duties implied by the CC&R and their promises in the Condo Plans and sales materials if they do anything to impact the owners ability to use their own rental agency and violate the development plans, they submitted.

59.    This interpretation is further confirmed in an email sent in 2021 when Anderson Co replaced SRL as the HOA management company.  In this email, it is outlined

> *"Due to the change in relationship, it's important to understand the difference in services provided by SROA versus services provided by Seascape Resort Ltd. Services provided by Seascape Resort Ltd. Are available to participating rental program units and included the following:*

> - *Full-service retail reservation management, including front desk check-in and customer service*
> - *Golf cart and shuttle service rides*

- *On-site housekeeping services*
- *On-site management and emergency response services*
  - *27/7 on site- property management response service*
- *Shipping and receiving services, including will-call and packages delivery*
- *In-room dining*
- *Pool Towels.  Rental program owners and resort guests will be provided pool towels in the unit.*
- *Concierge services, including golf course reservations, beach bonfires and in-suite spa services*

Kyla Holcomb Piramoon was cc'ed on this email. (See **Exhibit E** Email from Bella transition).  This email did not limit pool access.  Moreover, the HOA has been demanding accounting from SRL regarding HOA funding on-site security and these requests have been ignored.  We believe the HOA has been funding on-site security as required by CC&R and this is another example of self-dealing and use HOA funds against the spirit of the incorporation documents.

60.    Plaintiffs Daniel and Marcia Wallis (Plaintiff Wallis), with family members Dominic and Maureen Caloiaro, visited the on-location sales team at Seascape Resort.  They were driven around by Jim Maggio, GM for SRL at the time and told that the HOA owns the pool and all common areas.  They were also told by Mr. Maggio they could self-rent or use the on-site rental agency with no limits on access to amenities.  Their real estate agent was Steven Byrd.  Mr. Byrd was sales manager for "Holcomb Real Estate."  We believe this was The Holcomb Corporation (DBA Holcomb Real Estate).  Kyla and Mark Holcomb were the officers of the Brokerage, as well as licensed real estate agents.   They continued to sell properties based on the same promises made by both Mr. Maggio and Mr. Byrd. Thus, perpetuating lies and omissions to the detriment of current and future owners of properties that purchased through them.  The continued to market sales success to current owners of Units within Seascape Resort.

61.     During the sales process, the Plaintiff received materials from The Holcomb Corporation regarding the property.  These documents were similar to the document Plaintiff found on the Defendants Brokerage website: titled "<u>Prospective Owner Frequently Asked Questions,</u>" this document states:

> *Frequently Asked Questions Regarding the Owner's Association & Common Area*
>
> *Upon close of escrow, all owners automatically become members of the Seascape Resort Owners Association ("the Association" or "SROA"), a California non-profit mutual benefit corporation. The Association is responsible for the management, administration, maintenance, preservation, and architectural control of the Units and the Common Area.*
>
> ***The Association owns the Common Area of Seascape Resort****, except for the Commercial Units, which contain the Main Lobby, Registration Desk, Conference Rooms and Restaurant facilities, which are privately owned and operated by Seascape Resort Ltd.*
>
> *The condominium units are the private property of each individual owner for the owners' exclusive use subject to the CC&R's, By-Laws and Rules of the Association.*
>
> *The Association is operated under a Managing Agent-Board of Directors system. The Board of Directors contracts with a qualified management company (the "Managing Company") (emphasis added* See **Exhibit B**).

62.     This document implies that the common areas, fire pits, pools, gyms, beach fire pits, and similar facilities are all owned by the homeowners association, while only the listed commercial areas are considered separate property.  There is no mention of use of any facilities being based on use of SRL run management company.

63.    At the time, the Holcomb family designated a family-owned management company to run the *Seascape Resort Owners Association (SROA)*, as well as, the onsite hotel management company Seascape Limited (SRL).  SRL also owned the hotel and restaurant commercial facilities on site, and SRL also owned unit 85 and unit 534, which now claim exclusive control of all common areas on the south bluff and main building.

64.    When Plaintiffs purchased their unit, The Holcomb Corporation (aka Holcomb Real Estate and/or Brokerage) specifically stated that HOA fees cover on-site security, as required by the governing documents.  When making these presentations, the Holcomb family owned and controlled the HOA management company, the SRL management company, and owned and operated the Commercial spaces onsite.  Defendants are now claiming that non-SRL rentals lack on-site security, as required by land use documents, and argue that these owners are in violation of these land-use rules.  Defendants have also refused to produce their commercial records to prove the HOA has not been funding these amenities, consistent with the CC&Rs.  Again, Defendants are manipulating the facts to deny property owner's rights and unfairly have them pay for services now being denied, all for their personal gain.

65.    At this time, The Holcomb Corporation, doing business as Holcomb Brokerage and or Holcomb Real Estate, the brokerage firm that represented Plaintiff Wallis in the sale, was also owned and operated by Mark Holcomb and the Holcomb family.  Mark Holcomb was also the developer of the property.

66.    Thus, The Holcomb Corporation benefited from the misleading potential of ownership rights and drove up sales prices to their benefit. Defendant Kyla Piramoon continued to perpetuate these lies and omission for the benefit of family run businesses.

67.    In 2021 when SRL was replaced by Anderson Management as HOA manager they never said that any pool access would be impacted by the transition.  They only stated that pool towels would not be provided by the Hotel.

68.    Plaintiff Wallis and Mr. and Mrs. Caloiaro purchased a unit in April 2001 based on the belief they were acquiring ownership of all the common areas of the resort by the agent of the SRL, and The Holcomb Corporation (dba Holcomb Real Estate and/or Brokerage firm).

69.    Marcia Caporn is Plaintiff Wallis' daughter.  She used the property with her parents for 25 years, believing they owned all the amenities.

70.    The Holcomb Family and SRL fraudulently had HOA members, including Plaintiffs, to pay for the maintenance of alleged units and property they don't own, enhancement to features SRL now claim exclusively control and ownership of.  Thus, over the course of their control and management they illegally funding family-owned assets at the detriment of the Unit Owners.

71.    In 2022, Plaintiff Marcia, daughter of Marcia and Daniel Wallis, and Adam Caporn (Plaintiff Caporn), purchased 50% of the ownership rights from Dominic and Maureen Caloiaro. They purchased these rights based on the representations made during the sale and while using the property for over 25 years, as well as the statements made by the previous owners.

72.    Now, Defendant Seascape Resort Limited (SRL) is attempting to sell its business and claiming ownership rights over the common areas, contrary to the statements and promises made by The Holcomb Corporation (dba Holcomb Real Estate and/or Brokerage). Thus, they are engaging in self-dealing to benefit the family's interests.    Moreover, unlawfully denying access to owner unless they use their family-run hotel management program is unlawful and constitutes further bad faith and self-dealing and anti-trust behavior.

73.    Defendant SRL commercial sales materials they state the Sount Bluff common area is exclusive use and includes transfer of 45 acres fee simple. (See **Exhibit B**).

74.    In 2021, Plaintiff Wallis was removed from the hotel management program because she refused to agree to the $125,000 contractor designated to remodel all the units.  Plaintiff Wallis demanded multiple contract quotes and options, and the SRL rejected these requests.

75.    Because Mrs. Wallis refused to use their contractor for the work, she was told to hire her own management company and was not eligible for SRL management. Until June of 2025 she was allowed to use the Pool.

76.    In June 2025, SRL received a preliminary injunction to lock out all non-SRL-managed properties from the pool based on the statement that they were granted "exclusive use" of these common areas.

77.    Defendant SRL and Defendant Kyla Piramoon have been threatening criminal charges, legal action and legal action for anyone that refuses to use her family run rental agency.

78.    Defendant SRL demands about 50% of sales revenue.  This includes deductions from gross rental of HOA fees, Management Fees, Maintenance fees, Long Term Reserve Fund.

79.    In 2025, when visiting the property, Plaintiffs were denied access to use fire pits and other common areas and were told they were not part of the SRL pool.  Their renters were also denied access to these amenities.

80.    At the time of purchasing, Plaintiff's were never told their ownership rights were contingent on SRL management.  Moreover, there is evidence of SRL mismanagement to the detriment of homeowners.  It has come to the Plaintiff's attention of several of employee grievances against SRL management, failure to pay rental payouts timely, inflated fees for management and additional costs for owner use; owner blackout periods, unapproved free night compensation for employee complaints and free Rooms for large events (benefiting the SRL commercial businesses at the expense of home owners with no disclosures), and other restrictive measures that inhibit the ownership rights.

81.    Since Plaintiffs use AirBnB to rent the unit and their unit is booked months in advance for the summer season, this lockout of common areas is causing economic harm to Plaintiffs.

//

//

82.    Defendant Kyla Piramoon stated that Plaintiffs could be cited for a misdemeanor for using AirBnb to manage their property.   Defendant Piramoon is a licensed attorney in California and threats of criminal action are illegal.

83.    Defendants continued manipulation of the property rights surrounding Plaintiffs' unit has caused severe economic damages as the ongoing litigation harms the owner's ability to sell and drives down the value of the property.

84.    In the 1996 Annexation document it clearly limits the "'Exclusive Use for the Benefit of Unit 534' is part of the Common Area consisting of decks, patios, stairs or loading arras for general commercial activities including food and beverage services and conference center space." Therefore, while the map is over-broad and vague, this limitation on areas for commercial use is at odds with the recreational nature of features within the map, as a lot of the HOA recreational features are allegedly included in "Exclusive Benefit of 534." (see **Exhibit G** 1996 Annexation).

85.    While we still maintain Mr. Holcomb needed Board approval before self-dealing to the detriment of the Project, in 1998 Mark Holcomb filed Annexation for the South Bluff, which included unit 534.  In this it doesn't include the pool and spa in this exclusive use description.  It specifically states:

> "All those areas identified as 'Exclusive Use Common Area For The Benefit Of Unit 534' … which include, but are not limited to, all Deck and Patio Areas **adjacent to** Unit 534 <u>and the Pool and Spa</u>, **including the right to conduct general commercial activities including food and beverage service within said Exclusive Use Common Area**." (emphasis added; See **Exhibit H** 1998 Annexation)

86.    In California HOA law, "Exclusive Use Common Area" means a portion of the common area designated for the exclusive use of one or more, but fewer than all, of the owners of the separate interests. (See Civil Code § 4145.) Thus, Unit 534's rights are exclusive use rights, not

ownership.  This was exclusive use right for commercial purposes but not to exclude personal use or use of renters of Units as that is in direct conflict with the CC&Rs.

87.    Public Policy & Civil Code § 4600 requires a vote before conveying exclusive-use common areas. On August 11, 2025, Plaintiffs were told there is not record of a vote for giving SRL complete control of this area which includes pool and HOA land and recreational features.

88.    The pool, putting greens, fire pits and paths are recreational amenities and not a commercial support area as suggested in the Annexation write up.

89.    All ambiguous are read against the drafter, who is Mark Holcomb of The Holcomb Corporation and owners of SRL and Units 85, and Unit 534. Plaintiffs allege the Association (or HOA) retains ownership of the pool and spa as common area property.  And Defendants The Holcomb Corporation and SRL fraudulently tried to transfer rights to themselves (without a vote); this did not transfer ownership rights and is void because not consistent with CC&Rs in place.

90.    As real estate Brokerage for the Plaintiff, Holcomb Real Estate (The Holcomb Corporation) the agents made statements contrary to what SRL now allege the Annexation documents support.  The Holcomb Family owns and controls both of these entities and purposefully misleading the protentional buyers and the Plaintiffs.  Their families concerted efforts to mislead and misstate rights is massively fraudulent in now point to vague maps and details in conflict with the written limitations of space for commercial activities, not cutting off access to recreational amenities.

# UNDISCLOSED INTERFAMILIAL OWNERSHIP AND FRAUDULENT SCHEME

91.    On information and belief, at the time of Plaintiffs' purchase, the entities involved in the sale, management, and governance of the Seascape Resort property—The Holcomb Corporation, Seascape Resort Ltd., Kyla, Kay, and Lois Holcomb, and the HOA—were all controlled by overlapping parties, including members of the same family.

92.     Specifically, Kyla Holcomb Piramoon's mother ("Kay") and late father ("Mark") are the principal owner of Seascape Resort Ltd., the entity now asserting that it—not the HOA—controls the resort amenities and can limit access at its discretion.  It is also believed that Lois Holcomb is an active member of these Corporations and assets.

93.     Mark Holcomb was also the developer of the property and controlled the HOA at the time of formation and when Plaintiffs purchased the property in 2001.

94.     On further information and belief, Kyla Holcomb Piramoon is a direct beneficiary of these resort assets and businesses through her family's estate plan, and thus stands to profit personally from restrictions placed on independent unit owners; after reaping benefits greatly from her Brokerage firm selling on site with promises otherwise.

95.     Despite Holcomb Real Estate Brokerage (The Holcomb Corporation) and SRL being owned by the same family, and financial beneficiary of Seascape Resort Ltd., the Holcomb family never disclosed these material conflicts of interest to Plaintiffs during the sales process. Nor did the Holcomb family disclose that access to the promised amenities was conditioned on participation in their family's rental management program.

96.     Once Plaintiffs were kicked out of the Seascape rental program for using their own remodeling company after their purchase, Defendants began denying access to the very amenities that were promised as a core benefit of ownership.  However, this did not include the pool or other common areas near her unit until SRL was positioning to sell their interest in the Resort.

97.     These denials were not based on legal restrictions or changes in ownership, but were instead a coercive tactic to punish non-participating owners and force enrollment in the management program operated by Defendants and their family members. Attempting to inflate their sales price of SRL.

//

//

98.     In essence, Defendants engaged in a classic bait-and-switch scheme: marketing and selling ownership with full access to amenities, while secretly intending to revoke those rights to pressure owners into enriching the seller's own family business.

99.     This conduct amounts to antitrust behavior as Defendants are illegally tying HOA amenities to a Defendant run business.

# FIRST CAUSE OF ACTION:
## SELF-DEALING AND AIDING AND
## ABETTING BREACH OF FIDUCIARY DUTY
### (Against All defendants)

100.    Plaintiffs incorporate all prior paragraphs.

101.    Mark Holcomb, who has now passed away, was the developer of the Seascape Resort. He operated under Holcom Corporation.  As a developer, he controlled HOA Board while the organization was set up.  As developer and controller of the HOA Board, he owed the homeowners a fiduciary duty. Mark Holcomb and his wife Kay are the primary owners of SRL, and SRL is the owner of the commercial units on Seascape resort.  Mark Holcomb and his daughter Klya Holcomb were designated the authorized agents for The Holcomb Corporation, doing business as, Holcomb Real Estate and Holcomb Brokerage, which sold on-site.  Mark Holcomb, while in control of the HOA board, designated a family-owned company to manage the Seascape Resort HOA.

102.    Defendants, as the prior developer and in control of HOA Board had a fiduciary duty to the homeowners.  Their mismanagement and self-dealing of the property harmed the Plaintiffs.

103.    Defendants, after acting as controllers and secretary of HOA continued to submit new plans for approval, including the South Bluff in 1996.  In these plans, they continued to deed themselves commercial units and vaguely defined exclusive common area space to facilitate their

self-dealing and denial of property rights.  These acts did not follow CC&R rules or spirit of the Project.

104.    Public Policy & Civil Code § 4600 requires a vote before conveying exclusive-use common areas.

105.    As Controller of HOA Board, Developer, and management of common interest rights the Holcomb family and subsidiaries used their control of all sides of the deal to manipulate property rights and HOA fees to defraud the homeowners within the resort.

106.    Defendants used the other Defendants as a tool and corporate shield to aid and abet in their self-dealing.

107.    Defendants' ownership of Holcomb Real Estate (The Holcomb Corporation) owed to their clients a duty to disclose these conflicts.  They breach this duty when not disclosing their multiple conflicting ownership rights of the property.  Moreover, they made statements to buyers (Plaintiffs),  SRL now say, are not true.   They are conveniently benefiting from both the driving up of unit prices while selling and now transferring those promised rights to their family-owned business SRL as they prepare to sell.

108.    Defendants collectively used their positions while they owed fiduciary duties to act in the best interest of the owners—not to further personal enrichment.

109.    By using their positions of control to steer owners into a family-run rental program—and denying promised access as punishment—Defendants breached their obligations and acted in self-interest.  It is also unknown how Lot One was transferred to the Holcomb Family without HOA consideration.

110.    The Defendants and Holcomb family corporations are committing antitrust activities in violation of California law (Cartwright Act, Bus. & Prof. Code §§ 16700 et seq.) and federal law (Sherman Act §§ 1–2)

111.    Defendants are illegally tying pool and common area access, which is part of the property rights homeowners already paid for, to the mandatory use of the Holcomb family's management company.

112.    Plaintiff, and other homeowners cannot use the pools (a core amenity) unless they pay for or accept the Holcomb management services, which is a coercive connection that restricts competition among other property managers and harms owners' rights to self-manage.

113.    Defendants know that Plaintiffs and other homeowners would never buy a unit overlooking a pool that they cannot use and would never pay for the maintenance and costs of a pool they don't own or in some way have limited access rights to.

114.    The concealment of Defendant Kyla's personal stake in the scheme exacerbates the breach and supports claims for damages, disgorgement, and injunctive relief.

115.    The Holcomb family's use of different corporations to hide and mislead buyers of their self-dealing and cost transferring to homeowners was fraudulent and breached their fiduciary duty.

116.    Plaintiffs seek damages for the harm including punitive damages to deter future bad faith conduct.

## SECOND CAUSE OF ACTION:

## UNFAIR BUSINESS PRACTICES

## (Business & Professions Code § 17200, et seq.)

## (Against All Defendants)

117.    Plaintiffs re-alleges and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

118.    California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 et seq., prohibits any unlawful, unfair, or fraudulent business act or practice.

119.     Defendants have engaged in unlawful business practices by violating multiple statutory and common law duties, including but not limited to:

    a.  Failing to disclose material conflicts of interest (Cal. Civ. Code §§ 1709–1710);

    b.  Engaging in fraudulent inducement and concealment during the sale of the property;

    c.  Violating duties owed under California real estate regulations and fiduciary duties under the Real Estate Law (Bus. & Prof. Code §§ 10176, 10177).

    d.  Defendants' conduct violates California Business & Professions Code §17500 et seq., which prohibits any person, firm, corporation, or association from making or disseminating any statement concerning real estate or services which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

120.     Defendants have engaged in unfair business practices by using their control of both the real estate brokerage and the resort management entities to:

    a.  Misrepresented that HOA ownership included full access to all resort amenities, while secretly planning to revoke such access unless owners joined Defendants' rental management program;

    b.  Coerce Plaintiffs and other homeowners by restricting or denying access to pools, gyms, spas, and fire pits, despite collecting HOA dues that expressly included maintenance and access to such amenities;

    c.  Manipulate ownership rights and property values for Defendants' financial gain, including inflating sales prices at the time of purchase and later diminishing property value by restricting promised benefits.

    d.  The moving of HOA property to personal assets of the Family

    e.  Using HOA funds to fund personal assets and maintain personal assets.

f.  Fraudulent accounting and mismanagement of HOA funds for personal gain.

g.  They have been unfairly booking business in Unit owners that support their efforts to hurt not SRL renters.

h.  They have been hosting meetings to attempt to harm the HOA Board management and control violating Davis Sterling and other HOA laws.

i.  They have been approaching renters and telling them to cancel booking and rebook through them.

j.  Mrs. Piramoon has threatened criminal action for not using their rental agency to rent unit.

121.  Defendants have engaged in fraudulent business practices by making misleading and deceptive statements in marketing materials, sales presentations, and HOA documents regarding:

a.  The true ownership, access, and control of resort common areas;

b.  The existence of undisclosed familial relationships between Holcomb Family, The Holcomb Corporation, and Seascape Resort Ltd., which were material to the transactions and never disclosed to Plaintiffs.

122.  Defendants engaged in antitrust behavior when they actively sought to condition common area access to SRL-managed properties.  This action limited property rights promised to homeowners and allowed for over 25 years of use and with express payment of HOA dues.  This behavior harms the ability of owners to self-manage and fairly use essential property rights for the purpose of the property.

123.  Defendants' conduct is ongoing and continues to cause harm to Plaintiffs and other similarly situated homeowners by unlawfully denying access to promised amenities, diminishing the value of their property, and interfering with their ability to rent and use their units.

124.  Plaintiffs have suffered economic injury, including but not limited to:

a.  Payment of inflated purchase prices based on false representations;

b.  Payment of HOA dues without receiving the promised benefits;

c.  Loss of rental income due to restricted amenities;

d.  Diminished resale value of the property through the loss of property rights and benefits.

125.    Pursuant to Business and Professions Code § 17203, Plaintiffs seek injunctive relief prohibiting Defendants from engaging in these unlawful, unfair, and fraudulent practices, and requiring Defendants to restore full amenity access to all unit owners.

126.    Plaintiffs also seek restitution of all monies wrongfully obtained from Plaintiffs, including improperly collected HOA dues and management fees, as well as all other relief allowed under the UCL, including but not limited to attorney's fees and costs.

## THIRD CAUSE OF ACTION:
## FRAUDULENT INDUCEMENT
### (Against All Defendants)

127.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

128.    Defendants knowingly and intentionally misrepresented and concealed material facts during the marketing and sale of the condominium units at Seascape Beach Resort, with the intent of inducing Plaintiffs to purchase the property at an inflated price.

129.    Specifically, Defendants, including The Holcomb Corporation dba Holcomb Real Estate and Brokerage, including Kyla Holcomb Piramoon, and Seascape Resort Ltd. ("SRL"):

a.  Represented, both verbally and through written marketing materials, that the Seascape Resort Owners Association (HOA) owned and maintained all resort amenities—including pools, spas, fitness centers, and fire pits—and that ownership of a unit guaranteed full and permanent access to these amenities;

b.  Represented that HOA dues paid by Plaintiffs covered the maintenance and use of these amenities, without any mention of additional requirements such as mandatory participation in Defendants' rental management program; and

c.  Failed to disclose that SRL and The Holcomb Corporation were controlled by the same family, and that Defendants had a direct financial incentive to later restrict access and force homeowners into their family-run rental management program.

130.    At the time these representations were made, Defendants knew or should have known that they were false. Defendants were aware that SRL, not the HOA, claimed ownership and control of many amenities, and that they intended to restrict use by homeowners who did not join the SRL rental pool.  Moreover, Defendant Piramoon perpetuated the fraud by continuing to produce documents to suggest that what Plaintiffs were told at the time of sale was true.  Moreover, her conduct and disclosures were consistent that the HOA owned the pool and there was no disclosures of her Family's business, SRL, being able to unilaterally cut off access to all the core amenities of the Project.

131.    Defendants also concealed material facts, including but not limited to:

a.  Their family ownership and control over both Holcomb Brokerage and SRL;

b.  The fact that access to resort amenities was not guaranteed and could be revoked by SRL;

c.  Their plans to enforce restrictive conditions on homeowners who declined to use SRL's management services.

132.    Defendants made these false statements and omissions with the intent to deceive Plaintiffs, and perpetuate the lie, and induce them to purchase the unit, thereby profiting from inflated sales prices and ensuring ongoing economic leverage over homeowners.

133.    Plaintiffs reasonably relied on Defendants' representations and omissions in deciding to purchase the condominium and in determining the value of the property. Plaintiffs would not have

purchased the unit—or would have paid significantly less—had they known the true facts. They are also unclear how the HOA fees were fairly calculated if use was tied to being a part of Commerical business run by SRL.

134.    As a direct and proximate result of Defendants' fraudulent inducement, Plaintiffs have suffered damages, including but not limited to:

      a.  Paying an inflated purchase price based on false representations of ownership rights;

      b.  Paying HOA dues for amenities they are now denied access to;

      c.  Loss of rental income and reduced property value due to SRL's unlawful restrictions; and

      d.  Additional financial harm in attempting to regain promised rights.

135.    Defendants' conduct was fraudulent, oppressive, and malicious, justifying an award of punitive damages under California Civil Code § 3294.

136.    Plaintiffs seek compensatory damages, punitive damages, rescission or reformation of the transaction to reflect promised ownership rights, and all other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION:

## BREACH OF IMPLIED CONTRACT

### (Against All Defendants)

137.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

138.    By their conduct and representations, Defendants entered into an implied-in-fact contract with Plaintiffs.

139.    Specifically, Defendants represented through written marketing materials, HOA disclosures, and oral statements that:

    a.   Ownership of a condominium at Seascape Beach Resort included full use of resort amenities (pools, spas, fitness center, fire pits, etc.);

    b.   Monthly HOA dues covered maintenance and access to these amenities;

    c.   Amenity access was not contingent on participation in Defendants' rental management program.

    d.   For over 25 years of ownership, there were never statements that use of the pool or facilities was limited by participation in SRL-run management company.

    e.   While Defendants manage the HOA, there were never any statements or changes to CC&R's that limited owners property rights

140.    When Plaintiffs purchased their unit, The Holcomb Corporation (Holcomb Real Estate) specifically stated that HOA fees cover on-site security, as required by the governing documents.  When making these presentations, the Holcomb family owned and controlled the HOA management company, the SRL management company, and owned and operated the Commercial spaces onsite.  Defendants are now claiming that non-SRL rentals lack onsite security, as required by land use documents, and argue that these owners are in violation of these land-use rules.  Defendants are manipulating the facts to deny property owner's rights and unfairly have them pay for services now being denied, all for their personal gain.

141.    These representations, combined with the acceptance of HOA dues for over 25 years, created an implied promise that Plaintiffs' ownership rights included unfettered access to all HOA-owned amenities.

142.    Plaintiffs fulfilled all conditions, covenants, and promises required of them, including paying the full purchase price of the unit, paying all HOA dues, and complying with all applicable rules.

143.    Defendants breached the implied contract by:

    a.   Denying Plaintiffs access to common amenities;

b.   Conditioning access on participation in the SRL rental management program; and

c.   Retaining HOA dues while failing to provide the promised benefits.

d.   As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages, including but not limited to:

144.   Loss of access to resort amenities;

a.   Reduced property value;

b.   Lost rental income;

c.   Other economic losses in an amount to be proven at trial.

145.   Plaintiffs seek compensatory damages, restitution of dues paid without benefit, and such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION:
## BREACH OF THE COVENANT OF GOOD FAITH AND
## FAIR DEALING
## (Against All Defendants)

146.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

147.   California law implies a covenant of good faith and fair dealing in every contract, including implied contracts, to ensure that neither party will do anything to unfairly interfere with the right of the other to receive the benefits of the agreement. (See *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 371 (1992)).

148.   By their conduct, Defendants created an implied-in-fact contract with Plaintiffs, as alleged in the prior Cause of Action, whereby:

//

//

a.  Plaintiffs' payment of HOA dues and purchase of their condominium unit guaranteed full access to resort amenities such as pools, spas, fitness center, and fire pits;

b.  Defendants, acting as the HOA manager, real estate brokers, and resort operators, undertook obligations to maintain these amenities and provide use to all owners.

c.  Even if the promises regarding amenities and HOA dues are viewed as an implied-in-fact agreement rather than an express contract, Defendants were still bound by the implied covenant of good faith and fair dealing.

149.   Defendants breached this covenant by:

a.  Arbitrarily and maliciously revoking Plaintiffs' access to resort amenities despite continued collection of HOA dues;

b.  Using denial of access as a means of coercion to force Plaintiffs into Defendants' family-controlled rental management program;

c.  Misleading Plaintiffs into believing they retained full amenity rights while secretly planning to restrict access for Defendants' personal financial gain; and

d.  Taking actions that deprived Plaintiffs of the primary benefits of ownership, including the ability to rent the unit and enjoy the amenities as originally promised.

150.   Defendants' conduct unfairly frustrated the legitimate expectations of Plaintiffs, causing substantial harm, including:

a.  Loss of the benefit of their HOA dues and payments;

b.  Decrease in property value due to restricted access;

c.  Lost rental income due to diminished guest appeal;

d.  Emotional distress and inconvenience related to ongoing disputes.

151.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial.

152.    Plaintiffs seek compensatory damages, restitution, injunctive relief, and any other relief the Court deems just and proper

## SIXTH CAUSE OF ACTION:

## FRAUD

## (Intentional Misrepresentation, Concealment, and Deceit)

## (Against All Defendants)

153.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

154.    Defendants made numerous false representations of material fact to Plaintiffs, including but not limited to:

a.    Representing that the Seascape Resort Owners Association (HOA) owned, maintained, and controlled the resort amenities (pools, spas, fitness center, and fire pits), and that an ownership of a condominium unit included permanent and unrestricted access to these amenities;

b.    Representing that monthly HOA dues included the cost of maintaining and accessing these amenities;

c.    Representing that Plaintiffs were free to self-manage their units or choose a property manager, with no requirement to join Defendants' rental management program; and

d.    Omitting material facts regarding Defendants' familial ownership and financial control of both Holcomb Brokerage and Seascape Resort Ltd. (SRL), and their intention to later restrict amenity access for their own financial gain.

155.    These misrepresentations were perpetuated both verbally and through writing by Kyla Holcomb Piramoon and other agents of The Holcomb Corporation during property tours, as well as in written marketing materials, "Owner Information Guides," and HOA disclosures, all of which emphasized that HOA membership guaranteed access to the common resort amenities.  Plaintiff's purchased the unit through The Holcomb Corporation (Holcomb Real Estate) and the Brokerage, run by Holcomb family.  Defendant Kyla Piramoon, continued to provide these statements and sell these services to homeowners through the life of The Holcomb Corporation.

156.    At the time these statements were made, Defendants knew they were false and misleading. On information and belief, Defendants were aware that SRL, not the HOA, claimed control of certain amenities and intended to impose restrictions on homeowners who did not participate in SRL's rental program.

157.    Defendants intentionally concealed material facts, including the overlapping family ownership of Holcomb Brokerage and SRL, the conflicts of interest arising from this dual role, and their plan to revoke amenity access unless Plaintiffs participated in their rental pool or remodeling arrangements.

158.    Defendants made these misrepresentations and omissions with the intent to deceive Plaintiffs and continue to have them rely on these lies and induce them to:

    a.    Purchase the property at an inflated price;

    b.    Continue paying HOA dues under the belief that full amenity access was included; and

    c.    Ultimately, try and coerce Plaintiffs into using SRL's management program and services for Defendants' financial benefit.

159.    Plaintiffs reasonably relied on these misrepresentations and omissions. Plaintiffs would not have purchased the property—or would have paid substantially less—had they known the alleged facts regarding amenity access, ownership control, and Defendants' financial interests.

160.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered damages, including but not limited to:

    a.  Overpayment for the condominium unit;

    b.  Loss of access to resort amenities;

    c.  Diminished property value and lost rental income and income potential;

    d.  Economic losses from paying HOA dues for services and amenities unlawfully denied.

    e.  Loss of and damage of reputation and opportunities

161.    Defendants' actions were fraudulent, oppressive, and malicious, entitling Plaintiffs to punitive damages under California Civil Code § 3294.

162.    Plaintiffs seek compensatory damages, punitive damages, rescission or reformation of the purchase agreement (if applicable), and any other relief deemed just and proper by the Court

## SEVENTH CAUSE OF ACTION:

## Quiet Title – All Common Areas and Amenities

## (By Plaintiffs against All Defendants)

163.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

164.    Plaintiffs are the owners of real property located at Seascape Resort, unit 519, which they purchased in reliance on representations and actions made by Defendants, including The Holcomb Corporation dba Holcomb Real Estate (onsite Brokerage), and related entities, that the purchase included the right to use common area amenities, including but not limited to the swimming pool ("Pool"), beach, fire pits and other onsite amenities.  Defendant Kyla Holcomb Piramoon became owner and agent in charge of The Holcomb Corporation brokerage firm perpetuated these lies to continue to defraud the owners of Units sold by The Holcomb Corporation and to unlawfully

induce current owners to pay and believe they owned amenties she and her family planed to unlawfully withhold to drive up the SRL sales price.

165.    At the time of sale, and all times follow, Defendants The Holcomb Corporation (Brokerage arm) represented that the Pool, beach fire pits, and other amenities were part of the Seascape Resort Homeowners Association (HOA) common areas and were for the benefit of all unit owners. Defendants' marketing materials, real estate disclosures, and verbal representations all conveyed that Plaintiffs' property interest included access to these amenities.  Thus, the Defendants and agents of Defendants perpetuated this fraud until they wanted to sell SRL and the Commercial units.

166.    1996 and 1998 Annexation documents suggest that the Exclusive Use for the Benefit of 534 is only for commercial support purposes.  *"'Exclusive Use for the Benefit of Unit 534' is part of the Common Area consisting of decks, patios, stairs or loading areas <u>for general commercial activities</u> including food and beverage services and conference center space."* (*See* 1996 Annexation; 1998 Annexation).  Plaintiff believes that these limitations were tied to commercial opperations that did not include recreational amenities like the pool, fire pits and putting greens promised in the tours. Their belief was that Unit 534 was the only owner allowed to rent out the space for larger commercial ventures, conferences, weddings and catering opportunities.

167.    Plaintiff read the CC&Rs, where there was to be no impact in their sole discretion to use on site or personal rental agency to allow this activity to fall outside the scope of commercial activity limited to SRL.

168.    Plaintiffs relied on these representations in purchasing their unit and paid a price reflecting the value of these amenities.

169.    Despite these representations, Defendants are now asserting exclusive ownership and control over the Pool, all gas fire pits and beach land, and other amenities through a commercial

entity owned and controlled by the same family as the brokerage and are denying Plaintiffs access to these amenities.

170.     Based on the CC&Rs Unit 534's alleged property right was unreasonable and not aligned with the purpose of the Project should have been approved by majority vote of HOA members, not including Declarant.  There is no record of this vote.  Defendants claim their "exclusive use" right which is a commercial use license can be unfairly expanded to deny other Unit owners' access to amenities.    This interpretation is overly broad and unfounded.  These alleged self-serving property rights are void and illegal.

171.     Plaintiffs claim that they hold, as part of their property rights, an equitable interest, easement, or appurtenant right of use in the Pool and related amenities as represented at the time of sale.

172.     An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding Plaintiffs' rights of access to the Pool and other amenities, with Defendants denying or interfering with these rights.

173.     Plaintiffs seek a judicial declaration that they have a legal or equitable right, easement, or other title interest to use the Pool and related amenities as promised at the time of purchase and that Defendants have no right to deny Plaintiffs such access.

## EIGHTH CAUSE OF ACTION:

### Equitable Easement / Easement by Estoppel

### (By Plaintiff against all Defendants)

174.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

175.     Plaintiffs are the owners of real property located at Seascape Resort, Unit 519, (the "Property").  As part of the purchase transaction, Plaintiffs were represented and led to believe by

Defendants, including The Holcomb Corporation dba Holcomb Brokerage and perpetuated their agent of the Brokerage, Kyla Holcomb Piramoon (collectively, "Defendants"), that certain amenities—including but not limited to the swimming pool ("Pool")—were part of the common areas owned and managed by the Seascape Resort Homeowners Association (HOA) for the benefit of all property owners. Plaintiff's bought their unit, which overlooked this pool, for this ownership right and close proximity.

176.    Defendants represented that unit ownership carried with it the right to use and enjoy the Pool and other shared amenities. These representations were made orally, in marketing materials, and through sales documents, and were a substantial factor in Plaintiffs' decision to purchase the Property.

177.    In reliance on these representations, Plaintiffs purchased their unit, paying a purchase price that reflected the value of these amenities. Plaintiffs' reliance was reasonable and foreseeable, and Defendants knew or should have known that Plaintiffs would rely on their statements regarding ownership and access to the Pool.

178.    Subsequent to the purchase, Defendants (or entities under their ownership or control) have asserted that the Pool is exclusive operated and controlled by a commercial entity affiliated with Defendants and is not part of the HOA's common area. Defendants have now denied Plaintiffs access to the Pool and other amenities, contradicting their prior representations.

179.    An equitable easement or easement by estoppel arises when:

    a.  The owner of property, by words or conduct, leads another to reasonably believe that they have a right to use a portion of that property;

    b.  The other person reasonably and detrimentally relies on that belief; and

    c.  Equity requires enforcement of that right to prevent unjust harm.

//

//

180.    By their statements and conduct, Defendants created an implied and equitable right of access to the Pool and amenities for Plaintiffs as part of their purchase. Plaintiffs detrimentally relied on Defendants' conduct by purchasing their property under the belief they would have this access.

181.    Equity and fairness dictate that Defendants be estopped from denying Plaintiffs access to the Pool and related amenities because Plaintiffs' reliance was reasonable, and the loss of access substantially diminishes the value and enjoyment of their property

## NINTH CAUSE OF ACTION:

## Violation of Sherman Act §§ 1 and 2 (15 U.S.C. §§ 1, 2)

## (Against All Defendants)

182.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

183.    Defendants, acting individually and in concert, have engaged in an unlawful scheme to restrain trade and monopolize the market for rental management services at Seascape Resort  by leveraging their control over Homeowners' Association ("HOA") amenities, including the pool, fire pits, putting greens, and other common facilities.

184.    Specifically, Defendants have conditioned or "tied" access to essential HOA amenities on the requirement that unit owners utilize Defendants' affiliated property management services, or forego the use of competing rental managers such as Airbnb and other licensed agencies.

185.    Defendants have further reinforced this unlawful restraint by:

a.    Threatening criminal sanctions and misdemeanor charges against unit owners and renters who use competing management companies or platforms.

b.    Interfering with rental contracts, including contacting renters directly and coercing them to cancel reservations with non-affiliated agencies and move to Defendants' own managed units.

c. Initiating legal actions against several competing rental agencies to intimidate and exclude them from the market.

d. Promulgating HOA rules and policies that discriminatorily bar or burden owners who rent through outside managers, while permitting unfettered access to Defendants' own rental customers.

186. These practices constitute an unlawful tying arrangement in violation of Section 1 of the Sherman Act, because Defendants have conditioned the availability of one product (access to common area amenities, which are essential for the habitability and marketability of the units) upon the purchase of a separate product (property management and rental services offered by Defendants).

187. Defendants' conduct also constitutes attempted monopolization and monopolization in violation of Section 2 of the Sherman Act, as Defendants have:

a. Possessed and exercised monopoly power in the defined relevant market — property management and rental services within the Seascape Resort.

b. Willfully maintained and enhanced this power through exclusionary, coercive, and predatory practices rather than through competition on the merits.

c. Caused actual harm to competition by eliminating alternative rental managers, reducing consumer choice, inflating costs to owners and renters, and restricting output.

188. The relevant market is the provision of property management and short-term rental services at Seascape Resort and its surrounding resort area. Because of HOA restrictions and geographic uniqueness, unit owners and renters cannot reasonably turn to alternative markets for the tied product. There is no long-term rental option based on Project plans.

189. Defendants' conduct has injured competition and caused antitrust injury to Plaintiffs and other unit owners, who have been deprived of free and fair access to rental management options, have lost income due to Defendants' coercion and interference, and have faced diminished property values.

190.    Pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), Plaintiffs and other affected unit owners are entitled to recover treble damages for the injuries sustained as a result of Defendants' violations of the Sherman Act, together with the costs of suit and reasonable attorneys' fees.

191.    Plaintiffs are further entitled to injunctive relief under Section 16 of the Clayton Act (15 U.S.C. § 26) to restrain Defendants from continuing their unlawful tying and monopolization practices and to restore competitive conditions within the market for property management services.

## PRAYER FOR RELIEF

Plaintiffs request:

1.    Compensatory damages;

2.    Punitive damages;

3.    Treble damages under 15 U.S.C. § 15;

4.    Permanent injunctive relief enjoining Defendants from conditioning amenity use on exclusive management arrangements, threatening criminal penalties, interfering with rental contracts, or otherwise restraining trade;

5.    Restitution and disgorgement;

6.    Injunctive relief;

7.    For a judicial declaration and order quieting title in Plaintiffs' favor that they hold rights, easements, or appurtenant interests granting access to the Pool and other amenities represented as part of the property at the time of purchase;

8.    For a judicial declaration of an equitable easement granting Plaintiffs and other unit owners access to the Pool and amenities as represented at the time of sale and perpetuated by Mrs. Piramoon and The Holcomb Corporations during their sales process;

9.    For an injunction prohibiting Defendants from interfering with or denying Plaintiffs' use of the Pool and related amenities;

10.     For attorneys' fees and costs as permitted by law;

11.     Pre and post judgement interest;

12.     Off-set for any adverse tax implications of Order;

13.     For such other and further relief as the Court may deem just and proper.


DATED: August 21, 2025                **LOUDERBACK LAW FIRM**

                                      By: /s/ Marcia Caporn
                                           Marcia A. Caporn
                                      Attorneys for Plaintiffs
                                      MARCIA WALLIS, DANIEL WALLIS,
                                      MARCIA CAPORN, and ADAM CAPORN

# DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.


   DATED: August 21, 2025           **LOUDERBACK LAW FIRM**


                              By:    /s/Marcia Caporn
                                   Marcia A. Caporn
                            Attorneys for Plaintiffs
                            MARCIA WALLIS, DANIEL WALLIS, MARCIA CAPORN, and ADAM CAPORN