UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCIA WALLIS, et al.,

Plaintiffs,

v.

THE HOLCOMB CORPORATION, et al.,

Defendants.

Case No. 25-cv-07098-HSG

**ORDER GRANTING MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE**

Re: Dkt. No. 25, 26

Before the Court is Defendants' motion to dismiss Plaintiffs' first amended complaint, Dkt. No. 25 ("Mot."); Dkt. No. 29 ("Opp."); Dkt. No. 30 ("Reply"), and Defendants' request for judicial notice. Dkt. No. 26. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** the motion to dismiss, Dkt. No. 25, **GRANTS** Defendants' request for judicial notice, Dkt. No. 26, and **EXPUNGES** Plaintiffs' notice of lis pendens, Dkt. No. 2.

## I. BACKGROUND

Plaintiffs Marcia and Daniel Wallis, Dominic and Maureen Caloiaro, and Marcia and Adam Capron are condominium owners at Seascape Resort. Dkt. No. 10 ("Am. Compl.") ¶¶ 1, 7. At issue in this case are representations Defendants made about condominium owners' access to amenities, which are owned by the homeowners association, and a requirement that owners participate in Defendants' rental management program to use some of those amenities. *Id.* ¶¶ 1–2.

Defendant Holcomb Corporation is a real estate brokerage licensed in California and the developer of Seascape Resort. *Id.* ¶ 32. Defendant Seascape Resort Ltd. ("SRL") is a California limited partnership that operates a resort and management company and asserts control over common areas at the Seascape Resort, such as the pool, putting greens, and fire pits. *Id.* ¶¶ 23, 36. The Holcomb Corporation and SRL are owned and controlled by the Holcomb family. *Id.* ¶¶ 24,

United States District Court
Northern District of California

30–37. Defendant Kyla Holcomb Piramoon is a licensed real estate managing director of The Holcomb Corporation and member of SRL. *Id.* ¶ 33. Kay Holcomb is the CEO of SRL. *Id.* ¶ 34. Lois Holcomb is a representative for several Holcomb entities and owns several of its properties. *Id.* ¶ 35.

Although the Holcomb entities developed the Seascape Resort, the Seascape Resort Owners Association (the HOA) owns the common areas of the resort, except for the commercial units (including the main lobby, registration desk, conference rooms, and restaurant facilities), which are owned and operated by SRL. *Id.* ¶ 18. In addition to managing those facilities, Defendants provide rental management services through which unit owners may contract with SRL to lease their units for short-term rentals. Defendants manage the units as a "pool," which includes 198 of the 280 units at Seascape Resort. Am. Compl. ¶¶ 93, 116.

The development is encumbered by Covenants, Conditions & Restrictions of Seascape Resort, which were recorded in 1992 and 1994. Dkt. No. 10-3 at 2–68 ("CC&R") (attachment to amended complaint). The CC&R indicates that certain portions of the resort common areas are set aside for the exclusive use of certain units. *Id.* § 3.03. Unit 85 was given exclusive use of several parking spots and "all Deck and Patio areas adjacent to the Conference Center, Unit 85, and the Pool, including the right to conduct general commercial activities including food and beverage service within the Exclusive Use Common Areas." *Id.* § 3.03(c). Separately, Section 3.05 permits the annexation of property to become subject to the CC&R, so long as the annexation does "not result in an unreasonable diminution of benefits to, or an unreasonable increase in the burdens upon existing Owners . . . ." *Id.* § 3.05(a)(2). In 1996, SRL submitted annexation documents adding residential units and one commercial unit (Unit 534). Am. Compl. ¶ 72. SRL owns Unit 85 and Unit 534, which together have exclusive rights over portions of the Common Areas, *id.* § 3.02, and SRL claims that only those units may house 24-hour on-site centralized management. Am. Compl. ¶ 55. The CC&R separately grants condominium owners the "sole discretion" to choose which rental agency to use, if they choose to rent their unit. Am Compl. ¶ 8; CC&R § 4.08.

In April 2001, the Wallis and Caloiaro plaintiffs purchased condominiums at Seascape

Resort. Am. Compl. ¶ 1. Following their purchase, Plaintiffs paid for use of the Common Area amenities. *Id.* ¶ 21. Until 2022, the Wallis plaintiffs participated in the rental management program, but were "kicked out of the program" after they refused to agree to use Defendants' chosen contractor for a remodel. *Id.* ¶¶ 22, 158, 180. Thereafter, they began self-renting through AirBnB. *Id.* ¶¶ 22, 165–66. In 2025, Defendants changed the locks on the pool facilities and began excluding unit owners who did not participate in their rental management program. *Id.* ¶ 87.

The HOA previously sued SRL in Santa Cruz County Superior Court. *See* Dkt. No. 10-4 (briefing in support of preliminary injunction in state court suit, attached as an exhibit to the amended complaint). SRL filed a cross-complaint and obtained a preliminary injunction that allowed SRL to "lock out" unit owners who did not participate in the management program from the pool and other common areas. Am. Compl. ¶¶ 87, 160; Dkt. No. 10-4 at 383–405 (describing requested injunction); Dkt. No. 26-7 at 5 (describing injunction).[1] Plaintiffs filed a lawsuit against Defendants in the same court, seeking the same relief they seek here, save for their current federal claims. *See* Mot. at 10–11[2]; Dkt. No. 26-3. The Court denied Plaintiffs' motion to unwind the preliminary injunction order. Mot. at 10–11; Dkt. No. 26-4 at 14–15. Plaintiffs then dismissed their state court action and brought this suit in federal court. *Id.*; Dkt. No. 26-5. Defendants move to dismiss the complaint for a lack of subject matter jurisdiction and for a failure to state a claim. Dkt. No. 25.

## II. LEGAL STANDARDS

### A. Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

[1] The Court grants Defendants' request for judicial notice, Dkt. No. 26, and takes notice of the documents as public records reflecting the claims at issue and any court orders in the earlier proceeding, but not for the truth of the contents of the documents.
[2] Unless otherwise noted, all references to page numbers herein are to the ECF header at the top of the page.

granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Dismissal for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. Proc. 12(b)(1). "Federal courts are courts of limited jurisdiction," and "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject matter jurisdiction exists." *See Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975, n.12 (9th Cir. 2012) (quotation omitted). The party invoking subject matter jurisdiction has the burden of establishing that such jurisdiction exists. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## III. DISCUSSION

Defendants contend that Plaintiffs' only basis for federal subject matter jurisdiction is its federal antitrust claims, and that Plaintiffs fail to plausibly allege those claims.

### A. Federal Antitrust Claims

Plaintiffs assert two antitrust theories. First, they allege that Defendants engaged in an "unlawful scheme to… restrain trade and monopolize the market for rental management services at Seascape Resort by leveraging their control over [the HOA] amenities, including the pool, fire pits, putting greens, and other common facilities." Am. Compl. ¶ 275. Plaintiffs allege that Defendants tied access to the HOA-owned amenities to the requirement that unit owners use Defendants' property and rental management services, instead of using AirBnB and other agencies, all in violation of section 1 of the Sherman Act. *Id.* ¶¶ 275–78. Second, Plaintiffs allege

that Defendants' conduct also amounted to attempted monopolization in violation of section 2 of the Sherman Act. *Id.* ¶¶ 279–81.

Defendants argue, among other things, that Plaintiffs failed to adequately plead a federal antitrust claim because the claims do not meet the interstate commerce requirement and the market definition is untenable. Mot. at 12–15. Plaintiffs counter that for purposes of federal antitrust law, effect on interstate commerce is broadly interpreted, and that their market definitions are sufficiently pled. Opp. at 7–11.

The Court's overall conclusion is that Plaintiffs' case at its core is simply a state law dispute, as reflected in the prior long-running state court lawsuits, and that they fall far short of legitimately pleading any antitrust violation under well-established standards, as explained below.

**i. Plaintiff Fails to Plead Any Effect on Interstate Commerce**

The federal antitrust laws only apply to "trade or commerce among the several states." 15 U.S.C. §§ 1, 2. *See also id.* §§ 14, 18, 45(a)(1). "To make a federal case, a plaintiff must show that the activities in question, although conducted within a state, have a 'substantial effect on interstate commerce.'" *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1143 (9th Cir. 2003) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 242 (1980)). It is enough to "demonstrate a substantial effect on interstate commerce generated by [defendants'] infected activity," and Plaintiffs need not make any "more particularized showing of an effect on interstate commerce caused by. . . activity that is alleged to be unlawful." *Id.* While the reach of the Sherman Act is broad, *see United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 558 (1944), Plaintiffs may not identify "a relevant local activity and . . . presume an interrelationship with some unspecific aspect of interstate commerce." *United States v. ORS, Inc.*, 997 F.2d 628, 630 (9th Cir. 1993).

Plaintiffs argue that "a significant portion of [SRL's] renters come from outside of California and book through interstate channels such as Air[BnB] and VRBO; that SRL employees instructed those guests to cancel existing Air[BnB] reservations and rebook exclusively through SRL; that rental transactions process through interstate credit-card networks; and that Defendants' false statements and exclusionary practices were directed at interstate travelers." Opp.

at 7–8 (citing Am. Compl. ¶¶ 23–26, 54–60, 87–94, 139, 161–67). In reply, Defendants argue that none of these paragraphs allege that renters visit Seascape Resort from out-of-state or travel interstate to visit Seascape Resort. Reply at 9 n.1.

Defendants are correct. The amended complaint contains no allegation about the interstate effect of renters from outside of California seeking to stay at AirBnBs, credit card networks, or practices directed at interstate travelers. It mentions AirBnB or VRBO only five times: (1) SRL told renters that AirBnBs were impermissible at Seascape Resort, Am. Compl. ¶ 28, (2) SRL stated that they did not believe it was possible for owners to manage their rentals through AirBnB and VRBO, *id.* ¶ 88, (3) Plaintiffs use AirBnB to rent their unit, *id.* ¶ 165, (4) Defendant Kyla Piramoon told Plaintiff that it was a misdemeanor to use AirBnB to manage their property, *id.* ¶ 166, and (5) Defendants tied access to HOA-owned amenities to using their property management services, instead of using AirBnB. *Id.* ¶ 276. Separately, Plaintiffs allege that SRL allegedly told Plaintiffs' renters to book through SRL and sought to exert control over local assets. Am. Compl. ¶¶ 28, 163, 276.

The Court finds that Plaintiffs have not alleged a substantial effect on interstate commerce. The few potentially relevant facts contained in the amended complaint are not obviously connected to interstate commerce, and do not plausibly state the required substantial effect. *See McLain,* 444 U.S. at 242; *Parks v. Watson*, 716 F.2d 646, 661 (9th Cir. 1983) ("There must be a sufficient nexus between the activity and interstate commerce so that it can be said that as a practical matter of economics there is a not insubstantial effect on the line of commerce involved."). And Plaintiffs' arguments in the opposition to the motion to dismiss are based on asserted facts simply absent from the amended complaint, which is impermissible. *See In re PG&E Corp. Sec. Litig.*, 806 F. Supp. 3d 962, 993 (N.D. Cal. 2025) (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)); *Foregger v. Redfin Corp.*, No. 24-CV-05701-HSG, 2025 WL 917103, at *2 (N.D. Cal. Mar. 26, 2025) (same).

The Court **GRANTS** Defendants' motion to dismiss the federal antitrust claims because they fail on this ground alone. In the interest of providing guidance for any potential amended complaint, the Court will also address some of the fatal flaws in Plaintiffs' current relevant market

allegations.

**ii. Market Definition**

As noted above, Plaintiffs allege both a Section 1 claim (tying) and a Section 2 claim (monopolization and attempted monopolization). Each of these claims requires Plaintiff, among other things, to plausibly plead a relevant market, and "[t]he 'relevant market' . . . requirement[] appl[ies] identically" to both claims. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 & n.3 (9th Cir. 2008).

The relevant market for antitrust purposes is "the area of effective competition," which means "the arena within which significant substitution in consumption or production occurs." *Epic Games*, 67 F.4th at 975. A relevant market includes both a geographic market and a product market. *Id*. Generally, "[t]he process of defining the relevant market is a factual inquiry for the jury." *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993). But "[i]f 'the alleged market suffers a fatal legal defect,' the court may dismiss the claim at the pleading stage." *PLS.COM, Ltd. Liab. Co. v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 839 (9th Cir. 2022) (quoting *Newcal*, 513 F.3d at 1045). To determine whether Plaintiffs plausibly allege that Defendants either monopolized or had a dangerous probability of monopolizing the market, the Court must assess the product and geographic markets alleged. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993).

Geographic market definitions should encompass where customers go to secure the product. *See, e.g., Saint Alphonsus Med. Ctr.–Nampa, Inc. v. St. Luke's Health Sys. Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015). The market is geographically bounded by "where buyers can turn for alternative sources of supply." *Id.* "Consumers do not define the boundaries of the market, products and producers do." *Newcal*, 513 F.3d at 1045. Plaintiffs' personal preferences regarding the product are irrelevant to the scope of geographic market when experience suggests that the relevant geographic market is larger. *See Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001). The Ninth Circuit has observed that defining "the relevant market cannot be performed with mathematical accuracy," *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997), but has held that a plaintiff's failure to identify a relevant market is a proper

ground for dismissal of a Sherman Act claim. *Tanaka*, 252 F.3d at 1063 (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir.1999)).

For purposes of explaining some of the fatal defects in the complaint, the Court focuses on the following geographic and product market definition, which sets out Plaintiffs' rationale for the definition:

> The relevant market is the provision of property management and short-term rental services at Seascape Resort and its surrounding resort area. Because of HOA restrictions and geographic uniqueness, unit owners and renters cannot reasonably turn to alternative markets for the tied product.

Am. Compl. ¶ 280.[3] In that relevant market, Plaintiffs contend that Defendants "possessed and exercised monopoly power," *id.* ¶ 279, by managing 198 of 280 units (approximately 70%). *Id.* ¶ 93.

Plaintiffs' factual allegations do not plausibly plead the proposed geographic market. The unit owners are the relevant "customers" or "purchasers" of rental management services. While the rental units are located at Seascape Resort, the rental management service providers (or the "sellers") are not required to be located on site. *See* Am. Compl. ¶ 55 (SLR owns the only units that can house on-site management services). Plaintiffs allege that the relevant sellers are SRL, AirBnB, and VRBO and that Plaintiffs use AirBnB, and there are no allegations which would support the inference that AirBnB and VRBO are themselves located at the Seascape Resort. *See id.* ¶¶ 55, 88, 165, 276 ("competing rental managers such as Airbnb"). Even taking the facts alleged as true, as the Court must at this stage, the complaint fails to support Plaintiffs' geographic market definition as a matter of law, which is a fatal legal defect warranting dismissal.

None of Plaintiffs' arguments to the contrary is persuasive. Plaintiffs argue that they "identif[ied] a narrow, economically distinct relevant market: the rental-management market for

---

[3] The Court notes that the amended complaint contains somewhat inconsistent allegations regarding the market definition. *See* Am. Compl. ¶ 275 (defining the relevant market as "rental management services at Seascape Resort"); *id.* ¶ 279(a) (defining the relevant market as "property management and rental services within the Seascape Resort"); *id.* ¶ 280 (defining relevant market as "property management and short-term rental services at Seascape Resort and its surrounding resort area"). This inconsistency in itself suggests a problem with Plaintiffs' claims. *See MLM Media LLC v. World Wrestling Entertainment, Inc.*, 655 F. Supp. 3d 946, 952 (N.D. Cal. 2023).

units at Seascape Resort," Opp. at 9 (citing Am. Compl. ¶¶ 107–10, 165–67, 274–83), and assert that "[c]ourts repeatedly find single-facility markets cognizable." *Id.* (citing only *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 992 (D.C. Cir. 1977)). *Hecht* is irrelevant for multiple reasons. First, one citation to a nearly forty-year-old out-of-circuit case obviously does not establish what courts "repeatedly" do. Second, in *Hecht*, the geographic market was not a single facility but "the area of metropolitan Washington, D.C." *Hecht*, 570 F.2d at 989. And third, the part of *Hecht* Plaintiffs cite applied the "essential facility" doctrine, which by its terms applies under narrowly limited circumstances to inputs owned by a monopolist whose use is necessary to enable competitors to compete in the market. *See* 570 F.2d at 992–93 (finding RFK Stadium to be an essential facility with respect to plaintiff who sought to stage competing professional football games); *AliveCor v. Apple, Inc.*, 163 F.4th 1259, 1271 (9th Cir. 2026) (explaining that the essential facility doctrine "solely imposes on the owner of a facility that cannot reasonably be duplicated and which is essential to competition in a given market a duty to make that facility available to its competitors on a nondiscriminatory basis") (cleaned up). So nothing in *Hecht* supports Plaintiffs' "single-facility market" claim (to the extent the Court can understand it), nor does there appear to be any plausible basis for application of the essential facility doctrine on the facts pled here.

It is also unclear what Plaintiffs are getting at from an antitrust standpoint in alleging that "Because of HOA restrictions and geographic uniqueness, unit owners and renters cannot reasonably turn to alternative markets." Am. Compl. ¶ 280. It is not clear whether this allegation is intended to support a geographic or product market definition. Facts regarding HOA restrictions and geographic uniqueness are irrelevant to the geographic market, which is defined based on where sellers operate. *See Saint Alphonsus Med. Ctr.*, 778 F.3d at 784. Nothing in paragraph 280 supports narrowing the geographic market to "Seascape Resort and its surrounding area." *See Tanaka*, 252 F.3d at 1063. If the references to HOA restrictions and geographic uniqueness are intended to support a product submarket, that definition is separately defective. It is not clear what "HOA restrictions" refers to other than the CC&R. But in any event, the existence of any restrictions in the CC&R cannot form the basis for Plaintiffs' claim of unlawful

market power, because Plaintiffs agreed to those restrictions when they purchased their units. *See Newcal*, 513 F.3d at 1048 ("[T]he law prohibits an antitrust claimant from resting on market *power* that arises solely from contractual rights that consumers knowingly and voluntarily gave to the defendant.") (discussing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3d Cir. 1997) and *Forsyth*, 114 F.3d at 1476).

The same is true regarding the "geographic uniqueness" allegation. First, Plaintiffs have not pled how geographic uniqueness changes the characteristics or provision of rental management services at Seascape Resort, compared to rental management services generally. *See Brown Shoe v. United States*, 370 U.S. 294, 325 (1962); *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 976 (9th Cir. 2023) (citing *Brown*). Plausible allegations to that effect would be required to define a narrower relevant product submarket. *See Brown Shoe*, 370 U.S. at 325. And "geographic uniqueness" does not justify an overly narrow market definition that fails to consider interchangeable substitute products. *See, e.g., Concord Associates, L.P. v. Entertainment Properties Trust*, 817 F.3d 46, 54 (2d Cir. 2016) ("[m]erely asserting that a commodity is in some way unique is insufficient to plead a relevant market").

For all of these reasons, the federal antitrust claims are **DISMISSED.**

### B. Supplemental Jurisdiction

Because the only asserted basis for jurisdiction is the existence of a federal question, having dismissed all the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims unless and until Plaintiffs state a viable federal claim. *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).

### C. Lis Pendens

Because the operative complaint has been dismissed, there is no action pending, and the Court thus **EXPUNGES** Plaintiffs' notice of lis pendens. Dkt. No. 2. *See 118 Ava, LLC v. Hunter*, No. 22-56115, 2025 WL 484614, at *2 (9th Cir. Feb. 13, 2025) (affirming dismissal of request for notice of lis pendens when the district court lacked subject matter jurisdiction);

United States District Court
Northern District of California

*McDavid v. Wells Fargo Bank, N.A.*, No. CV 11-05596-ODW (AJW), 2011 WL 4062509, at *2 (C.D. Cal. Sept. 12, 2011) (expunging notice of lis pendens since underlying case dismissed for lack of subject matter jurisdiction). The Court declines in its discretion to impose attorneys' fees and costs because it is granting leave to amend, though it will consider revisiting this issue depending on the contents of any amended complaint.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss, Dkt. No. 25, and **GRANTS** Defendants' notice for judicial notice. Although the Court is skeptical that Plaintiffs can assert a viable federal antitrust claim for the reasons laid out above, Plaintiffs are granted leave to amend within 21 days of this order. Any amended complaint may not add any new claims or defendants. The Court **EXPUNGES** Plaintiffs' notice of lis pendens. Dkt. No. 2.

In deciding whether to amend the complaint, Plaintiffs' counsel should carefully consider their obligations under Rule 11 of the Federal Rules of Civil Procedure and California Rule of Professional Conduct 1.1(c). Plaintiffs are advised that they must plead their very best case, adequately supported under antitrust authority (as discussed above and otherwise), and they should understand that the Court is very unlikely to grant further leave to amend. Plaintiffs should also consider whether they would simply prefer to pursue their state-law claims in state court.

The Court further **SETS** case a case management conference on September 1, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties are further **DIRECTED** to file a joint case management statement by August 25, 2026.

**IT IS SO ORDERED.**

Dated: 7/29/2026

Haywood S. Gilliam, Jr.

HAYWOOD S. GILLIAM, JR.
United States District Judge